[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Frederic R. Sistare and Charles E. Lindsey from the assessment of damages in the amount of $12,200 paid by the defendant for the partial taking by eminent domain on March 17, 1989, of their property situated on the southwesterly side of and known as 210-230 Deming Street in the Town of Manchester. The purpose of the taking was to widen Deming Street for the improvement of traffic in connection with the commercial and residential development of the surrounding area of town.
Said premises are more particularly shown on a certain map entitled: "Revised Taking Map Showing Land Acquired Fr, om Frederic R. Sistare 
Charles E. Lindsey By The Town of Manchester, County of Hartford, State of Connecticut, Date June, 1988, Rev. Aug. 6, 1991, Project 87-28, Fuss 
O'Neill, Inc., Consulting Engineers, Manchester, Connecticut," and are bounded and described as follows: North by Deming Street, 333 feet, more or less; East by land n/o/f/o Circle Associates, 15 feet, more or less; South by other land of the plaintiffs, being the "taking line" on said map, 340 feet, more or less; and West by the South Windsor and Manchester town line, 10 feet, more or less.
Said parcel of land taken contains 0.102 of an acre, more or less, and was taken together with the right to construct a driveway, and an easement to slope for the safety of the highway, and to remove, use or retain excavated material, all as shown on said map. Said right area contains about 0.001 of an acre, and said easement area contains about 0.040 of an acre.
At the time of the taking, the subject property consisted of a single parcel of land, containing 11.228 acres, on which were situated a two-story frame single-family dwelling, five sheds and outbuildings, and an inground pool. The land was pentagonal in shape, fanning out from the street with five unequal sides. Its shortest side was the frontage of 333.52 feet on the south side of Deming Street. The four remaining sides, running clockwise from the street at the northeast corner of the property, were: 751.70 feet; 570.87 feet; 425.88 feet; and 689.92 feet. The center and southerly portion of the land for its entire width, estimated at about four acres, contained wetlands, including a pond and two brooks.
The plaintiffs purchased this property on September 17, 1980. At the time of acquisition, the property extended over three zoning classifications: Residence A, Rural Residence and Industrial. They immediately subdivided the land into two parcels. Lot No. 1 was located CT Page 10012 at the northeast corner of the parcel and contained 0.498 of an acre, having a frontage of 120 feet on Deming Street and a depth of 180 feet along land n/o/f/o Circle Associates. The remainder of the property, containing 10.73 acres and all improvements, constituted Lot No. 2.
Thereafter, the plaintiffs applied to the Town Planning and Zoning Commission (TPZC) for two zone changes: Lot 1 to Business III, and Lot 2 to Residence M. On October 28, 1980, the TPZC granted the residential zone change for Lot 2, but denied the change to a business zone. An application for a less intensive commercial zone change was then requested, and on February 2, 1981, the TPZC classified Lot 1 as Business II zone.
Under the provisions of the Manchester Zoning Regulations, Article II, Section 7, "[a] Residence M Zone is a medium density residential district which allows or requires a proportion of different types of housing on any developed site and is designed to encourage the building of owner-occupied houses of moderate cost in proportion to multi-family dwellings." Article II, Section 11, provides: "A Business II zone is a commercial trade area for general public shopping convenience. The uses allowed in a Business II zone are by virtue of being Permitted Uses or Special Exceptions as defined in these regulations. . . ."
On July 6, 1981, the TPZC approved a subdivision of the subject property. The subdivision plan filed after approval contained only the following: (1) a survey with dimensions of the two lots; (2) a survey with dimensions showing the limits of the wetlands in the interior of Lot 2; (3) a notation within the wetlands area that a 4.3 acres drainage easement was to be granted to the Town of Manchester; this was subsequently given; (4) the location of the pond and two brooks within the area of the wetlands; (5) a 10 foot right of way running northeasterly from the wetlands to the southeast corner of Lot 1; and (6) a 20 foot right of way extending along the easterly edge of Lot 1 from its southeast corner to the street. No details of any subdivision for the commercial or residential development of the subject property, Lots 1 and 2 were included or shown on this plan.
As required by General Statutes, Section 8-26c, the TPZC stamp of approval on July 6, 1981, recited that "ALL WORK IN CONNECTION WITH THIS APPROVAL SHALL BE COMPLETED WITHIN FIVE YEARS FROM THE DATE OF THIS APPROVAL." This approval of the plaintiffs' incomplete subdivision plan thereafter expired by its statutory condition. At no time within this five year limitation, or subsequently before the taking, or even before this proceeding, did the plaintiffs seek further subdivision approval, or commence the development of the subject property, or of the portion remaining after the defendant's partial taking.
The westerly half of the subject property is at street grade and level to a depth of about 250 feet. The easterly half is about six feet above street grade and has a gradual slope down to the rear. Most of the land is covered with light brush, except in the area surrounding the dwelling. CT Page 10013
The highest and best use of Lot 1 is for commercial development consistent with its Business II zone classification. The highest and best use of Lot 2 is for owner-occupied homes of moderate cost in proportion to multi-family dwellings under the zoning regulations for its Residence M zone.
In any utilization of the subject property remaining after the taking for its highest and best uses, it must be recognized that the taking of street frontage by the defendant was of the better areas of the two lots. In the case of Lot 1, the commercial parcel, the taking of 15+ feet from the front of the lot, thereby reducing its depth to 165 feet or less, constituted a taking of 8.33% of the area reserved for business use, and that of the prime portion of the parcel. A similar consideration applies also to Lot 2 because its development for residential use is limited or confined in area by the wetlands in the rear, but not to the same extent. That is so for the reasons that the front area taken from Lot 2 extends from about 15 feet at the eastern boundary to about 10 feet at the western border at the town line, and about 350 feet of uplands still exist from the new highway line to the wetlands.
The defendant's appraiser used the market approach in his before and after taking valuations. The same three comparable sales of business properties and of residential properties were utilized for the before and after taking estimates of each of the two lots here. The sales utilized for valuing Lot 1 consisted of: (1) 7.78 acres with 355.7 feet frontage in a Business II zone, which sold for $100,257 per acre; (2) 0.685 of an acre with 94 feet frontage in a Business I zone, which sold for $163,503 per acre; and (3) 0.364 of an acre with 71.24 feet frontage in a Business zone, which sold for $206,044 per acre. Based upon these sales, he valued Lot 1 at $125,000 per acre, or $62,000 before the taking.
In determining the after taking value of Lot 1, the defendant's appraiser estimated the unencumbered portion of 0.375 of an acre at the same value of $125,000 per acre, or $46,875. The encumbered portion of 0.077 of an acre was valued at 50%, $62,500 per acre, or $4,813. The total value of Lot 1 after the taking he estimated to be $51,688, resulting in damages of $10,312.
The comparable sales he used in valuing Lot 2 were the following: (1) 3.0 acres with 125 feet frontage in a Residence AA and Rural Residence zone, which sold for $36,667 per acre; (2) 49.29 acres with 667.54 feet frontage in a Residence AA zone, which sold for $16,230 per acre; and (3) 5.2 acres with 220.36 feet frontage in a Residence AA zone, which sold for $18,250 per acre. Based upon these sales, he valued Lot 2 at $15,000 per acre, or $160,500 before the taking.
As to Lot 2, he valued the unencumbered portion of 10.507 acres at the same value of $15,000 per acre, or $157,605. The encumbered portion of 0.135 of an acre was valued at 50%, $7,500 per acre, or $1,013. In his opinion the total value of Lot 2 after the taking was $158,618, resulting in damages of CT Page 10014 $1,882. Combined damages for the two takings by his analysis, in the form calculated here, were $12,194, rounded to $12,200.
In the manner computed by the defendant's appraiser, he combined the valuations of Lots 1 and 2 before the taking at $222,500, and after the taking at $210,306, rounded to $210,300, resulting in damages of $12,200, which the defendant has paid to the plaintiffs.
The plaintiffs' appraiser also relied upon the market or sales comparison approach in determining the valuation of the two properties for the before and after valuations of Lot 1, he referred to the following four sales: (1) 16,500 square feet with 119.84 feet frontage in a Business III zone, which sold for $8.48 per square foot; (2) 25,300 square feet in a Business II and Residence B zones, which sold for $300,000, plus cost of demolition estimated at $10,000, or $12.25 per square foot; (3) 14,000 square feet in a Business II zone, which sold for $7.50 per square foot; and (4) 18,608 square feet in a Residence C zone, which sold for $15.05 per square foot.
Based on these sales, it was his opinion that Lot 1 had a market value of $7.50 per square foot, and a total value before the taking of $162,000. Because of its reduced size, he found its total value after the taking at the same unit value to be $147,000, resulting in damages to Lot 1 of $15,000
The plaintiffs' appraiser's valuations of Lot 2 before and after the taking lack probative value. They are based upon factors which are irrelevant, immaterial and without foundation in fact. They assume the full development of Lot 2 with condominiums, for which no development plan was ever approved, either before or after the taking. These values were founded upon conjecture and without supporting evidence. His conclusion that the before and after taking values of Lot 2 are determinable by a condominium unit valuation formula is founded on abstract speculation. The assessment by him of damages to Lot 2 in the amount of $121,500, therefore, is nonevidential and nonbeneficial to the court in this proceeding.
It is the duty of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, his knowledge of the elements that establish value, and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989). In performance of this duty, I find that the before taking value of Lot 1 was $160,000, and that its after taking value is $145,000, resulting in damages to the lot of $15,000. I further find that the before taking value of Lot 2 was $200,000, and that its after taking value is $190,000, resulting in damages to this lot of $10,000.
Judgment may enter for the plaintiffs in the amount of $25,000, less $12,200 already paid, or an excess of $12,800, with interest on such excess from the date of taking to November 26, 1990, in accordance with the CT Page 10015 stipulation of the parties, together with costs and a reasonable appraisal fee of $1,500.
William C. Bieluch State Trial Referee